The opinion of the court was delivered at the present term by
Kinsey, O. J.
(After recapitulating the facts set forth in the state of the case.) This suit is brought by Joab Stout, the legatee mentioned in the preceding clause of the will of the testator, to recover the amount of the bond thus devised to him, and the general question to be considered is, whether, under all the *circumstances that have been brought before the court, he is entitled to recover the whole or any part of that sum ?
*505 It is not questioned but that such a bequest is contained in the will; .that the bond therein referred to was then in existence, and if the legacy is not recoverable, this consequence must result from some or all of the following circumstances.
1. The acceptance, by the testator, of tho second bond from Titus, as principal, and John Phillips, as surety, in lieu of tho first bond, on which Titus caused a writ to be issued.
2. Or because the testator, in 1792, accepted of two bonds, the one executed by the administrators of Peter Phillips for the larger proportion of the first debt, the other executed by John Phillips for the residue of it, which bonds wero given to him in pursuance of some adjustment of the respective proportions for which the estate of Peter Phillips and John Phillips wero answerable on the first mentioned bond ; or—
3. The administrators of Peter Phillips paid to the testator, in his lifetime, three several sums of money on account of the bond so given by them, and, after his death, paid off the residue to the defendants, as his executors.
In addition to these circumstances, applying directly to the merits of tho controversy, it has been further contended, on the part of the defendant, that tho plaintiff ought to be non-suited, because he has declared for so much money due on the bond from Peter and John Phillips to the testator, which not being true in fact, is a variance from the proof fatal to his action.
This objection is perfectly immaterial, the plaintiff’s claim is founded wholly upon the clause in the will which he has set forth in his declaration; of this part of his case he was consonant, and is so presumed to be ; the after circumstances, to which he was neither party nor privy, cannot in any manner affect the form of his pleading. These circumstances, to which he was a stranger, if they have any opera *506 tion, go in bar for his recovery, and the real question in the case appears to me to be, whether the legacy be or be not adeemed by them ?
In the argument of this case, it has been justly observed, that courts have leaned against considering legacies as specific,* †on account of the consequences which would frequently follow. If *the article specifically bequeathed was not found among the effects of the testator, or is proved' to have been disposed of in his lifetime, the legatee, contrary to the obvious design of the testator, is deprived of all benefit from the bequest Ambl. 310. 1 Atk. 416.
Lord Camden, who seems to have thought this doctrine too firmly established to be overturned, and desirous of avoiding the consequences of considering a legacy as specific in a case before him, took a distinction between a bequest of £500, due on a bond from A. B. and a bequest of the bond itself.† This distinction had been before taken in Pawlet’s case, (T. Ray. 335) but is doubted by Lord Hardwicke, (Ambl. 310) and by Lord Thurlow, in 2 Br. Ch. Ca. 111. Had this distinction been established by express adjudications, it would have been decisive of this question; but it seems to be altogether exploded, and not to have been made the basis of a decision in any case. I consider the correct doctrine upon this point to be laid down in Cox’s note to P. Wms. 540, that wherever the testator specifically describes the chattel, and distinguishes it from all others of the same kind, it is a specific legacy. That when he bequeaths money in a particular chest, or a particular debt, it comes within this description. This is obviously the intention of the testator in the present case, and, under the authority of the best considered opinions, it must be considered as a specific legacy.
*507 Upon the question of ademption, the variety and inconsistency of the opinions which seem to have been entertained by men highly distinguished for their judicial characters, is not a little surprising. It is not only impossible, by any distinctions that can be drawn, to reconcile their opinions, but it is difficult to make some of those able lawyers consistent with themselves.
It is not necessary that I should go into an investigation of all the cases that have been cited in the argument, but I shall confine myself to those which furnish principles sufficiently certain and well supported, to decide the present controversy.
Among the discordant, decisions which have taken place, we can readily extract two propositions, which seem to, if not universally, yet generally to be recognized. 1. That there is a distinction between voluntary and compulsory payments. 2. That the first is not in itself an ademption; and that the second is not *necessarily an ademption, but at the utmost, only prima facie evidence of one, and may he explained so as to destroy this presumption.
In the case cited from 2 Br. Ch. Ca. 108, Thurlmo, while he denies the propriety of this distinction between voluntary and compulsory payments, admits that it had gained so much ground as to be a governing principle, and that it had been recognized both by Lord Talbot and Lord Hardwicke;* he even goes farther, he admits there are innumerable cases which support the doctrine, that a voluntary payment will not adeem a legacy of a debt. Parker evidently entertained the same opinion in 1 P. Wms. 461, King in 2 P. Wms. 471, and finally it seems to have been acquiesced in by Loughborough, in Coleman v. Coleman, 2 Ves. jun. 640. Thwrlow assigns no other reason for disapproving of the distinction, than that it seems not warranted by authority, and that it was exploded by Lord Camden in The Attorney *508 General v. Parkin, (Ambl. 566) and by Lord Macclesfield. But I am by no means satisfied that Lord Camden’s language will warrant such a construction, nor do I even think that Lord Thurlow intended to decide that a compulsory payment was necessarily an ademption of the legacy, and did not admit of being explained by testimony.
Sir Thomas Clark, in 2 Ves. 624, lays down what I conceive to be the real rule, which I think ought not to be varied from. A voluntary payment is not an ademption, because accepting money when tendered does not imply any alteration in the intentions of the testator; but when the testator compels payment, this fact may or may not amount to an ademption, according to circumstances. The quo animo is an important point to be considered. With this opinion, those of King, Parker, and Talbot fully coincide, and the reason they give carries conviction with it, that so far from designing to revoke his bounty, the testator may have called in the money from an apprehension of danger, and with a view to secure the legacy, rather than to defeat it.
The present chancellor, Loughborough, who had no doubt maturely weighed the discordant opinions on the subject, in Coleman v. Coleman, lays down his opinions, corresponding *with those of Sir Thomas Clark. He says, where the testator is compelled to receive payment of the debt, a pretty strong presumption arises, that there is no variation of intention; where he goes of himself, no necessity urging him, and destroys the form of the thing specifically given, that is a good ground of argument the other way.
These authorities are, in my mind, sufficient to establish the first general position I have stated, that there is a distinction between voluntary and compulsory payments.
All the authorities seem to recognize one general principle, that the question of ademption is, in all cases, a question of intention, as are most of the cases of implied revocations of wills. Hor has any one of the authorities *509 cited gone so far as to intimate, that, when the reasons upon which the testator proceeded in calling in the debt wero accounted for and explained, by reasons which indicate no change of intention towards the legatee, this shall amount to an ademption.
In the case before us, the fact is expressly stated, that the change of the first for the second bond, was done at the request of the surety, to accommodate, to secure, and to indemnify that surety; and, no othor cause being suggested, I do not think we are warranted in inferring, from mere conjecture, any other motive. The motives stated imply rather a negation of any other, and therefore the fact being fully accounted for, leaves no reason to infer any change of intention, and consequently it is no ademption.
If this be the case with regard to the change of the first, for the second bond, there seems no reason to presume an ademption from tho subsequent change for the third and fourth. Tho whole seems in continuation of the first design, to accomodate the debtor; and this last act seems to have been done with no other view, than to ascertain the proportions which the original debtors were respectively to pay of the first debt. They afford no ground, then, to presume a change in the mind of the testator.
In the case of Hambling v. Lister. (Ambl. 401) the master of the rolls did not consider the circumstance, that tho testator had agreed to a composition, and accepted £1000 in lieu of £1240, though secured by a mortgage, and soon afterwards laid out the money thus received on other securities, as an ademption. He considered it as shewing the testator apprehended it was in danger, *and therefore rebutted any presumption of an intention to adeem.
In the present case, we need not search for other motives, or infer them from dubious circumstances, to lead to tho same conclusion. The state of the case' shews what were *510 the views of the testator, and negative any intention to adeem. It is the opinion of the court, therefore, that'the plaintiff is entitled to judgment for the sum bequeathed to him.
Judgment for plaintiff.*

 See the authorities on this point. 4 Ves.jun. 555, 568, 748; 5 Ibid. 199, 461; 8 Ibid. 410 : 3 Dess. Ch. Rep. 373, 383.

 See Smith v. Fitzgerald, 3 Ves. & Beam. 2.

 See the opinion of the master of the rolls in Inner v. Johnson, 4 Ves. jun. 574. See, also, Fryer v. Morris, 9 Ves. 360. Stanley v. Potter, 2 Cox Rep. 180.

 In the case of Stanley v. Potter, (2 Cox Eq. Rep. 180) it is decided, that a bequest of a debt is adeemed by the debt being paid to the testator in his lifetime, whether the payment be compulsory or voluntary, or whether the sum be expressed in the bequest or the debt bequeathed generally.